UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARTHUR L. GAITHER,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:20-cv-02672 (ACR) |
| ) | |
| **DEBRA HAALAND,** Secretary, ) | |
| U.S. Department of the Interior, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Arthur Gaither, a Black male, was employed by the United States Park Police for twenty-five years.  The Park Police promoted him to Sergeant in 1998 and then to Lieutenant in 2006.  From 2015 to 2016, however, the Chief of the Park Police passed him over for a promotion to Captain five times.  Gaither brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*, primarily alleging discrimination based on race.  Dkt. 1 (Complaint).  The Park Police moves for summary judgment.  Dkt. 10 (Motion for Summary Judgment).

Gaither presents evidence from which a reasonable factfinder could conclude that he was qualified for the promotions.  But courts cannot second-guess employment decisions, "absent evidence of pretext or a discriminatory or retaliatory motive."  *Smith v. Hartogensis*, 541 F. Supp. 3d 1, 7 (D.D.C. 2021).  Gaither provides none.  The Park Police, on the other hand, presents admissible evidence supporting nondiscriminatory reasons for its promotion decisions— that the chosen applicants were all equally, if not more, qualified than Gaither and most had relevant experience Gaither lacked.  Dkt. 10-1 at 16–19.  Because a reasonable factfinder could

not conclude these reasons are pretextual, the Court GRANTS Defendant's Motion for Summary Judgment.

## BACKGROUND[1]

### I.  Gaither's Employment with the Park Police

Gaither worked for the Park Police from 1992 until his retirement in 2017.  Dkt. 10-5 (Gaither Dep. Tr.) 10:13–15, 11:15–17.  The Park Police promoted him to Sergeant in 1998 and to Lieutenant in 2006.  *Id.* 10:16–22.  During his tenure, Gaither served as a Patrol Officer for four years, a Patrol Sergeant and Crime Prevention Specialist for five years, and a Shift Commander for five years, all in the Central District.  Dkt. 10-22 (Plaintiff's Interrogatory Responses), Interrog. No. 8.  He also served as a Station Commander in the East District for four years.  *Id.*  At times, the Park Police called on him to serve as an acting captain when the Captain and Lieutenant were on leave.  *Id.*

Between 2015 and 2016, Gaither applied for promotion to Captain five times.  Dkt. 13 (Plaintiff's Statement of Material Facts) ("PSMF") ¶ 1; Gaither Dep. Tr. 75:11–18.  Although considered "well qualified" for each promotion, Gaither was never chosen.  PSMF ¶¶ 1, 33; Gaither Dep. Tr. 75:11–18.  Four of the promotions went to White candidates and a fifth went to a Black candidate.  *Id.*

---

[1] The Court sets forth the undisputed evidence and, where the evidence is disputed, the Court describes the evidence "in the light most favorable to the nonmoving party."  *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).  It bears emphasis, however, that a party that disputes certain evidence at summary judgment must do so clearly and must come forward with specific, controverting evidence.  *See* Fed. R. Civ. P. 56(c)(1).  It is not enough merely to assert that evidence is disputed.

## II.     The Park Police's Promotion Process

The Park Police uses a competitive, multi-step process to select promotion candidates.

*See* Dkt. 10-6 (General Order on Procedures for Promotion).  Each year, officers are rated either

"qualified" or "well qualified" for promotion to Captain.  Gaither Dep. Tr. 30:20–31:1; Dkt. 11-4

(Affidavit of Arthur Gaither, dated July 13, 2016) at 6–7.  When a job opens, the Human

Resources Office publishes a vacancy announcement with eligibility requirements.  Dkt. 10-6

at 3.  Interested applicants file a Notice of Interest and undergo a testing process at an

Assessment Center.  Dkt. 11-6 (Affidavit of Karlyn Payton-Williams, dated Oct. 7, 2016) at 7;

*see* Dkt. 11-4 at 11.  A recommending official reviews the candidates and test scores, chooses

three finalists, and recommends one to the Deputy Chief of the Park Police.  Gaither Dep. Tr.

31:2–8; Dkt. 11-3 (Fear Dep. Tr.) 12:19–13:5.  The Deputy Chief then recommends a single

candidate to the Chief and, in doing so, is not limited to the recommending official's finalists.

Gaither Dep. Tr. 31:9–16.

## III.     Gaither's Applications for Promotion

### A.  Icon Protection Branch, Central District

On or about August 14, 2015, the Park Police announced a Captain vacancy in the Icon

Protection Branch's Central District which "encompasses the downtown parks, the White House,

monuments, and the Central District station."  PSMF ¶ 2; Gaither Dep. Tr. 35:10–12.  By that

time, Gaither had served as "a patrol officer at Central for 4 years" and "as a Patrol Sergeant and

Crime Prevention Sergeant at the Central District for 5 years."  Dkt. 10-22, Interrog. No. 8.  He

had also "served as the acting Captain on numerous occasions."  *Id.*  Gaither applied.

PSMF ¶ 3, 33.

The recommending official for the vacancy, Major Steven Booker, also a Black male, did not list Gaither as one of his three finalists.  PSMF ¶ 6; Gaither Dep. Tr. 35:13–22, 36:7–10; Dkt. 11-4 at 9.  The Deputy Chief recommended Mike Wilson, a White male.  Dkt. 10-9 (Wilson's Selection Memorandum); Dkt. 11-4 at 16.  The Chief accepted his recommendation.  PSMF ¶ 5.  Major Booker did not name Wilson as a finalist, but Wilson was on the "well qualified" list.  Gaither Dep. Tr. 36:7–10; 44:1–4; Dkt. 11-4 at 16.  The Deputy Chief nonetheless recommended Wilson because of his integrity, his proven "ability to be strong and decisive but also humble," his "self-confidence and self-awareness to recognize the value of others without being threatened," his leadership, his "proven performance record," and his training at the FBI National Academy.  Dkt. 10-9.

Gaither had supervised Wilson at the Central District and was more experienced.  Dkt. 10-22, Interrog. No. 8.  But Wilson had a performance score of 4.8/5, compared to Gaither's 4/5 and, unlike Gaither, had graduated from the FBI National Academy.  PSMF ¶¶ 4–5; *compare* Dkt. 10-7 at 3 (Gaither's 2014 Performance Evaluation) *and* Dkt. 10-8 at 2 (Wilson's 2014 Performance Evaluation); Gaither Dep. Tr. 11:18–19, 53:18–21.

### B.  Icon Protection Branch, Special Forces Unit

On or about August 14, 2015, the Park Police announced a Captain vacancy in the Icon Protection Branch's Special Forces Unit.  PSMF ¶ 7.  That unit is "responsible for the SWAT team, the Motors, and the other support personnel that would generate and manage scheduling for special events" such as inaugurations or the Fourth of July.  Gaither Dep. Tr. 54:4–9.  Gaither applied.  PSMF ¶ 8.  Major Booker, again the recommending official, again did not list him as a finalist.  Gaither Dep. Tr. 54:10–15.

The Deputy Chief recommended, and the Chief selected, Mark Adamchik, a White male. PSMF ¶ 10; Dkt. 10-12 (Adamchik's Selection Memorandum); Dkt. 11-4 at 24.  The Deputy Chief's selection memorandum highlighted Adamchik's "leadership and ability to work with staff and stakeholders at all levels," his commitment to "continuously seeking opportunities to work collaboratively with others to strengthen and improve the programs within the Force," and his dedication to the community.  Dkt. 10-12.  The Park Police found that both Gaither and Adamchik were "well qualified" for promotion.  *Id.*; PSMF ¶ 33.  Of the two, Gaither had "more operational and administrative command experience," "more seniority in time on the job and rank as a Lieutenant," "more diverse assignments and leadership positions with the [Park Police] and US Army," "experience [supervising or commanding] each position Adamchik [held]," and experience working on large events and demonstrations.  Dkt. 10-22, Interrog. No. 9.  But Adamchik, unlike Gaither, had SWAT team experience within the Park Police, a relevant attribute for a position that oversaw a SWAT team.  Gaither Dep. Tr. 54:4–9, 59:1–4.  He also had a perfect performance rating of 5/5 (compared to Gaither's 4/5) and "a proven performance record."  PSMF ¶¶ 9–10; *compare* Dkt. 10-7 (Gaither's 2014 Performance Evaluation) *and* Dkt. 10-11 (Adamchik's 2014 Performance Evaluation).

### C.  Eastern District Patrol Branch, Operations Division

In 2015, the Park Police announced a vacancy for Captain of the East District Patrol Branch's Operations Division.  PSMF ¶ 12.  Gaither applied.  *Id.* ¶ 13.  The recommending official, Major Gregory Monahan, a White male, did not list Gaither as a finalist.  Gaither Dep. Tr. 61:13–18; Fear Dep. Tr. 16:6–9.  The Deputy Chief recommended and the Chief selected Christopher Stock, a White male, out of ten applicants.  PSMF ¶ 15; Dkt. 10-15 (Stock's Selection Memorandum); Dkt. 11-4 at 28.  Stock stood out due to "the diversity of his experience

and assignments; his track record of unwavering loyalty to collaboration[;] . . . his respect and trust within diverse communities; and his proven performance record."  Dkt. 10-15.

Gaither had supervised Stock.  Dkt. 11-4 at 28.  But again, Stock had a performance score of 4.6/5, higher than Gaither's 4/5.  PSMF ¶¶ 14–15; *compare* Dkt. 10-7 (Gaither's 2014 Performance Evaluation) *and* Dkt. 10-14 at 2 (Stock's 2014 Performance Evaluation).

### D.  East District, Patrol Branch, Operations Division

On or about May 18, 2016, the Park Police announced a second captain vacancy for the East District, Patrol Branch, Operations Division.  Complaint ¶ 77.  The position was filled by a Black male, Craigory Green, "as the result of a settlement agreement" rather than through the promotion process. [2]  *Id.* ¶ 78; Gaither Dep. Tr. 75:6–17.  Gaither does not put this position at issue, presumably because a Black employee filled the role.  *See* PSMF ¶ 1.

### E.  Training Branch, Services Division

On or around May 31, 2016, the Park Police announced an Assistant Commander vacancy for the Training Branch and Personnel Security, Training Branch Services Division.  *Id.* ¶ 16.  That Division "conducts . . . and manages training from Park Police inception . . . through mandates and annual in-services or any congressional or federal mandates for training."  Gaither Dep. Tr. 68:6–12.  Gaither applied.  PSMF ¶ 17.

Although "not a part of the general order," Major Richard Pope, the White recommending official, disqualified all applicants not in compliance with the force's requirement that its officers "take a [regular] physical."  Dkt. 11-6 (Affidavit of Karlyn Payton Williams, dated October 7, 2016) at 7; Dkt. 10-20 (Affidavit of Richard Pope, dated August 17, 2016) at 4;

---

[2] Gaither does not assert that the settlement agreement or underlying lawsuit have any bearing on the present case.

PSMF ¶ 20.  Major Pope valued compliance with the force physical requirement because the Assistant Commander "[manages] that function."  Dkt. 10-20 at 3, 6.  Gaither did not meet the force physical requirement and was thus not selected as a finalist.  PSMF ¶ 20.

The Deputy Chief recommended and the Chief chose James Murphy, a White male, in part, because "the diversity of [Murphy's] experiences and assignments; his track record of unwavering loyalty to collaboration[;] . . . his respect and trust within the workforce; and his proven performance record" made him the best of the nine applicants.  Dkt. 10-18 (Murphy's Selection Memorandum); Dkt. 11-5 (Comparative Data of Captain Selections Since 2013).  He also noted that Murphy "distinguished himself for his ability to work with staff and stakeholders at all levels, continuously seeking opportunities to work collaboratively with others to strengthen and improve the programs within" the Park Police.  Dkt. 10-18.  Again, Gaither testified that he had more experience and that Murphy had worked for Gaither.  *See* Gaither Dep. Tr. 72:22–23.  Even so, Murphy was qualified, received a 4.8/5 performance rating compared to Gaither's 4/5, and met the force physical requirement.  PSMF ¶¶ 18–20; *compare* Dkt. 10-16 (Gaither's 2015 Evaluation) *and* Dkt. 10-17 (Murphy's 2015 Evaluation); *see* Dkt. 10-20 at 6.

## LEGAL STANDARD

Summary judgment is granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A genuine issue of material fact is one that changes the outcome of the litigation."  *Smith v. Hartogensis*, 541 F. Supp. 3d 1, 9 (D.D.C. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[T]he court considers all relevant evidence presented by the plaintiff and defendant," *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008), but views that evidence in the light most favorable to the non-moving party, *see Johnson*, 823 F.3d at 705.

## ANALYSIS

### I.    The *McDonnell Douglas* Framework

Title VII provides that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race [or] color." 42 U.S.C. § 2000e–16(a). The burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies when, as here, the plaintiff claims disparate treatment but does not have direct evidence of discrimination. Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Holcomb, v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). If he does so, the burden shifts to the employer, who must "articulate a legitimate, nondiscriminatory reason for its action." *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019) (cleaned up). Then, "[i]f the employer meets its burden of production, the burden . . . shifts back to the employee, who must prove that, despite the proffered [nondiscriminatory] reason, [he] has been the victim of intentional discrimination." *Id.* (cleaned up).

The framework is slightly modified if the employer asserts a legitimate, nondiscriminatory reason for its decision at summary judgment. The D.C. Circuit provides a shortcut to prevent a "largely unnecessary sideshow about what constitutes a *prima facie* case." *Id.* at 1086–87 (citing *Brady*, 520 F.3d at 494). In *Brady*, the D.C. Circuit instructed the District Court to table *McDonnell Douglas* step one—whether the plaintiff made out a *prima facie* case—and instead focus on step three—the ultimate issue of whether the employer intentionally discriminated against the employee or not. 520 F.3d at 494. But the District Court cannot glide past *McDonnell Douglas* step two. It still must establish that the employer's purportedly

legitimate justifications for its actions are sufficiently substantiated before proceeding to step three. *Figueroa*, 923 F.3d at 1087.

## II.   The *McDonnell Douglas* Framework Applied

### A.   Step 1: Gaither's *Prima Facie* Case

In a failure-to-promote case, the plaintiff must prove by a preponderance of the evidence that "(1) [he] is a member of a protected class; (2) [he] applied for and was qualified for an available position; (3) despite [his] qualifications, [he] was rejected; and (4) either someone filled the position or it remained vacant and the employer continued to seek applicants." *Holcomb*, 433 F.3d at 895.

The parties agree that Gaither has made a *prima facie* case of race discrimination.[3]   As detailed above:  he is Black and thus a member of a protected class; he applied for and was declared qualified for the four promotion decisions at issue; he was rejected for those promotions; and other individuals filled the positions.

### B.   Step 2: The Park Police's Justifications for Not Promoting Gaither

Recall that the *Brady* shortcut does not allow courts to skip *McDonnell Douglas* step two—whether the employer's nondiscriminatory justifications for its actions are sufficiently substantiated. *Figueroa*, 923 F.3d at 1087.  To meet this standard: (1) "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding);" (2) the evidence must be such that if the factfinder believed it, they could "reasonably . . . find that the employer's action was motivated by a nondiscriminatory reason;" (3) "the nondiscriminatory explanation must be legitimate"—that is, "facially credible in light of the

---

[3] Because the step one analysis is straightforward here, the Court addresses it for the sake of completeness.

proffered evidence;" and (4) "the evidence must present a clear and reasonably specific explanation." *Id.* at 1087–88 (cleaned up).

The Park Police sets forth legitimate, nondiscriminatory reasons for the promotion decisions that Gaither challenges: the selectees were equally, if not more, qualified than Gaither and had relevant attributes Gaither did not. Dkt. 10-1 at 16–19. Each *Figueroa* factor supports the finding that the Park Police meets *McDonnell Douglas* step two.

First, the Park Police submits documentary evidence whose authenticity is undisputed. *See Figueroa*, 923 F.3d at 1087. That evidence includes performance evaluations for both Gaither and the selectees during the relevant period (Dkts. 10-7, 10-8, 10-11, 10-14, 10-16, 10-17), the Deputy Chief's selection memorandum for each position (Dkts. 10-9, 10-12, 10-15, 10-18), and the Park Police's promotion procedure (Dkt. 10-6). The Park Police also submits excerpts from Gaither's deposition transcript (Dkt. 10-5), Gaither's EEO affidavit (Dkt. 10-19), Major Richard Pope's EEO affidavit (Dkt. 10-20), a table listing the names and races of Captains selected since 2013 (Dkt. 10-21), Gaither's interrogatory responses (Dkt. 10-22), and Gaither's affidavits from other EEO investigations (Dkts. 10-23, 10-24, 10-25). These materials constitute competent summary judgment evidence. *See* FRCP 56(c)(1).

Second, a factfinder who believed the Park Police's evidence could reasonably find that the selectees' comparative qualifications motivated its decisions. *See Figueroa*, 923 F.3d at 1087. The evidence supports the stated hiring rationale in every case. The promotion procedure lays out an objective hiring approach which the Park Police followed. The selection memoranda detail the (nondiscriminatory) reasoning for each promotion decision. The chosen candidates all received higher performance evaluation marks than Gaither and most had attributes Gaither did not have. And every selectee was qualified.

As to the third and fourth factors, the Park Police's nondiscriminatory explanations are facially credible given the evidence provided. *See id.* at 1088. The Park Police's reliance on performance evaluations and the selectees' qualifications for specific promotions is facially credible. *See Moss v. Hayden*, No. 18-cv-470, 2020 WL 4001467, at *5 (D.D.C. July 15, 2020) (offering a "position to the highest-scoring interviewee" was a facially credible justification). Gaither proffers no evidence that calls that credibility into doubt. He does not, for example, identify any internal inconsistency in the reasoning behind any promotion decision or even across the five decisions. *Bishopp v. District of Columbia*, 788 F.2d 781, 788–89 (D.C. Cir. 1986) (employer's explanation may lack facial credibility if it is internally inconsistent). The explanations are also clear and specific enough for Gaither to "disprove," if he had evidence to do so. *Figueroa*, 923 F.3d at 1088. Based on the current record, he does not.

Taken together, the *Figueroa* factors show that a reasonable factfinder could conclude that the Park Police provides legitimate, nondiscriminatory explanations for the challenged promotion decisions.

## C. Step Three: Gaither's Rebuttal

With the *Figueroa* factors satisfied, the Court moves to step three of the *McDonnell Douglas* framework—does Gaither set forth enough evidence for a reasonable factfinder to conclude that the Park Police's stated reasons for not promoting him are a pretext for discrimination or retaliation. *See Brady*, 520 F.3d at 494. "Evidence of pretext may include variant treatment of similarly situated employees, discriminatory statements by decision makers, and irregularities in the stated reasons for the adverse employment decision." *Bennett v. Solis*, 729 F. Supp. 2d 54, 60 (D.D.C. 2010) (citing *Brady*, 520 F.3d at 495 n.3). Gaither provides no such evidence.

Instead, Gaither insists that he "can discredit [the Park Police's] justification for his non-selection/non-promotion by showing that similarly situated employees (in this case, Captains of another race ([W]hite) who were equally qualified) were selected." Dkt. 11 (Plaintiff's Opposition to Summary Judgment) at 8. Quite the opposite. If candidates are similarly qualified, "a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Holcomb*, 433 F.3d at 897 (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc)). So, "Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates." *Fischbach v. D.C. Dept. of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

Gaither must instead show that he was "markedly more qualified," "substantially more qualified," or "significantly better qualified" than those chosen over him. *Holcomb*, 433 F.3d at 897. Only then can the factfinder "legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007) (quoting *Aka*, 156 F.3d at 1294).

Neither side disputes that Gaither and the selectees were, at a minimum, similarly qualified. Gaither was well qualified for each role, had "more time as a Lieutenant than any of the selectees, had a broader list of prior job responsibilities[,] and had even trained several of the white selectees." Dkt. 11 at 9; PSMF ¶ 33. Yet each of the four had better performance ratings, each was qualified, and at least two of the four were also listed as "well qualified" for promotion. PSMF ¶¶ 4–5, 9–10, 14–15, 18–19; Dkt. 10-9; Dkt. 10-12. Three had at least one distinguishing

characteristic: Wilson attended the FBI National Academy; Adamchik served on a Park Police SWAT team; and Murphy met the physical requirement.[4]   Gaither Dep. Tr. 53:18–21, 59:1–2, 68:16–19.  Weighing Gaither's qualifications against those of other candidates does not create an inference of discrimination.  And this Court finds that no reasonable jury could conclude that Gaither was significantly more qualified than any of the selectees given his inferior performance evaluations and, where applicable, the selectees' distinguishing characteristics.

   Nor does Gaither produce evidence of racially discriminatory statements by decisionmakers or irregularities in the promotion process.  *See* Dkt. 11-6 at 8; Dkt. 11-7 at 8. Gaither admits that "each of the management officials interviewed in this matter denied any consideration of race in the decisions about [whom] to promote."  Dkt. 11 at 2.  He does not question their veracity, nor is there any evidence in the record to do so.

   Gaither claims statistics show that his non-promotion was part of the Park Police's pattern and practice of discrimination in its promotion decisions.  Dkt. 11 at 4–5.  "[A]n individual plaintiff may not bring a standalone 'pattern or practice' claim outside the context of a class action."  *Marcus v. Geithner*, 813 F. Supp. 2d 11, 20 (D.D.C. 2011).  Still, statistics can "create an inference of discriminatory intent with respect to the individual employment decision at issue."  *Boone v. Clinton*, 675 F. Supp. 2d 137, 145 (D.D.C. 2009) (quoting *Cooper v.*

---

[4] Courts typically treat subjective hiring criteria with caution on summary judgment because "subjective criteria lend themselves to racially discriminatory abuse more readily than do objective criteria."  *Harris v. Grp. Health Ass'n*, 662 F.2d 869, 873 (D.C. Cir. 1981); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1356 (D.C. Cir. 2012).  The Court is nonetheless satisfied with the Park Police's use of some subjective criteria here.  The performance evaluation scores are contemporaneous and, for the selectees, include specific examples to support each conclusion.  *See, e.g.*, Dkts. 10-7, 10-8, 10-11, 10-14, 10-16, 10-17.  The selection memoranda are also contemporaneous and contain selective hiring justifications traceable to the performance evaluations.  *See* Dkts. 10-9, 10-12, 10-15, 10-18.

*Southern Co.,* 260 F. Supp. 2d 1258, 1267 (N.D. Ga. 2003)); *Cook v. Boorstin*, 763 F.2d 1462, 1468 (D.C. Cir. 1985).

Statistics do not help Gaither here because he provides zero evidentiary or theoretical support for his assertions.  "[S]tatistical calculations performed . . . in discrimination cases are not probative of anything without support from an underlying statistical theory." *Battle v. Mnuchin*, 480 F. Supp. 3d 198, 208 (D.D.C. 2020) (quoting *Frazier v. Consol. Rail Corp.*, 851 F.2d 1447, 1452 (D.C. Cir. 1988)).  Statistics indicating "nothing more than an under-representation of a protected class cannot alone create a triable issue of fact" and failure to establish statistical significance "fatally undermines [a] claim." *Bolden v. Clinton*, 847 F. Supp. 2d 28, 35 (D.D.C. 2012) (cleaned up); *see Horvath v. Thompson*, 329 F. Supp. 2d 1, 11 (D.D.C. 2004) (finding statistical evidence in a discrimination case meaningless because it did not include the gender composition of all available and qualified applicants); *Hodge v. United Airlines*, 821 F. Supp. 2d 180, 196 (D.D.C. 2011), *aff'd sub nom. Hodge v. United Airlines, Inc.*, No. 11-7141, 2012 WL 1927759 (D.C. Cir. May 10, 2012) (applying *Horvath* to race discrimination).

Gaither's "statistics" are mere headcounts of White and non-White Park Police officers during various periods: (1) as of December 2016, only one out of fourteen employees at the rank of Major, Deputy Chief, Assistant Chief, and Chief was not White, PSMF ¶ 28; (2) over that same period, only four non-White employees held the rank of Captain or higher, *id.* ¶ 29; (3) from 2008 to 2016, six non-White employees held the rank of Major or higher, *id.* ¶ 30.  That is

the total of his analysis.[5]  Gaither does not provide any statistical analysis.  He does not claim the numbers have statistical significance.  Nor does he provide the numbers necessary for anyone to make the required analysis.  He does not state the total number of employees holding the rank of Captain or higher, or Major or higher, making it impossible even to determine the percentage of non-White employees in those ranks.  These numbers, standing alone, are not enough to defeat summary judgment.

### III.   Gaither's Retaliation Claim

In his Complaint, Gaither also makes a retaliation claim.  Complaint ¶¶ 19–20, 80.  The Park Police thoroughly addressed this claim in its motion.  *See* Dkt. 10-1 at 19–21.  Gaither's Opposition ignored it altogether.  *See* Dkt. 11.  On that basis, the claim is conceded.  *See Byrd v. Vilsack*, 931 F. Supp. 2d 27, 37 (D.D.C. 2013) (quoting *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003)).

Even if Gaither had addressed this claim, the Court would dismiss it.  Gaither presents no direct evidence of retaliation.  Nor does he present evidence that the Park Police's stated reasons for his non-selection are pretextual.  *Ward-Johnson v. Feleke*, No. 1:19-CV-0534 (CJN), 2022 WL 355239, at *7 (D.D.C. Feb. 7, 2022) (granting summary judgment on a retaliation claim because the plaintiff offered "no objective evidence demonstrating that she was substantially more qualified").  No reasonable jury could conclude that Gaither was denied promotion because of his prior EEO activity absent direct or circumstantial evidence.  He provides none.

---

[5] The Court cannot credit conclusory statistical statements with no citation to the record. *E.g.*, Dkt. 11 at 2.  Gaither claims that "80% of the promotions to Captain from September 2013–December 2016 went to [W]hite candidates." *Id.*  He provides no citation for this conclusion. To be sure, 80% of the positions to which Gaither applied went to a White candidate.  But Gaither does not state that those were the only promotions available during that same period.

## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment, and **DISMISSES** the case.  The Court **DIRECTS** the Clerk of Court to close this matter.

*This is a final appealable Order.*  FED. R. APP. P. 4(a).

Dated: July 20, 2023

                                                  _____

                                                  ANA C. REYES
                                                  United States District Court Judge